George Christensen WRIGHT et al.,
Plaintiffs and Appellants,

v.

Almira Black WRIGHT et al., Defendants and Respondents.

No. 13333.

Supreme Court of Utah.

March 22, 1974.

---

Reed L. Martineau, of Worsley, Snow & Christensen, Salt Lake City, for plaintiffs and appellants.

Robert L. Newey, of Lamph & Newey, Ogden, for defendants and respondents.

ELLETT, Justice:

This is an appeal by plaintiffs from a summary judgment in favor of the defendants. The appellants are the heirs of George F. Wright, Jr. (hereafter referred to as Junior), who was the only son of George F. Wright, Sr. (hereafter referred to as Senior), by his second wife, Almira. The defendants are children of Senior by his first wife, Maude.

The following dates are significant to a determination of this matter:

1897 Senior married Maude.

1920 Maude died, leaving six living children.

1921 Senior married Almira.

1922 Junior was born.

1948 Senior made his will.

1956 Senior died testate.

1957 Decree of distribution was entered in the matter of Senior's estate.

1971 Junior died leaving heirs.

1972 Almira died.

The will of Senior provided:

. . . to my said wife, Almira Black Wright, to take and use the same and the net income thereof during all the term of her natural life, and after her death to my son George F. Wright, Jr., provided he pays within six months after her death, the expenses of her funeral and the sum of One Hundred Dollars ($100.00) each to my other children, namely: Lucille Wright Davenport, Leone Wright Shreeve, Thelma Wright Winters, Edwin William Wright, Cecille Wright Hendricks and Pearl Wright Parish; and in the event he shall fail or decline to pay said funeral bill and said sum of $100.00 to each of said six chil-

dren within said time, then I direct that said real estate be sold and the net proceeds of sale be distributed equally among said six children and my said son George F. Wright, Jr. And if any of my said children should die without issue, then his or her share shall go in equal shares to the survivors and the issue of any deceased child or children, so that the child, or children collectively, of a deceased child shall take only the share which his, her or their parent would have taken if living, my intention in all cases being that the issue of any deceased child shall take collectively the same share as the deceased child would have taken if alive.

In his memorandum decision the trial court stated the reasons for his ruling, to wit:

After a substantial reading of the authorities including The Law of Future Interests written by Lewis M. Simes and Allan F. Smith the court has determined that it is not necessary to characterize the devise in question as either subject to a condition subsequent or precedent. Rather the Utah statutes on this subject indicate that the court's function is to seek out and give effect to the testator's intention.

\*   \*   \*   \*   \*   \*

It seems to the court that the testator's intention . . . was that testator intended George Wright, Jr. to perform a *personal act* in exchange for *the personal enjoyment* of a particular piece of property and that if George Wright, Jr. did not *personally perform* his right of *personal enjoyment* would not vest or would be divested by nonperformance. . . . [Emphasis added.]

The trial court was in error in thinking the will required a *personal act* on the part of Junior. The payment of money is not a personal act which could be rendered only by the devisee. It could be just as satisfactorily made by the children of Junior as by Junior himself, and it should make no difference to the respondents herein. The

funeral director would not care who paid the burial expenses. His sole interest is in receiving the money for the services rendered. The defendants were entitled to receive $100.00 each, and whether it came from Junior or from his estate or from his heirs could not matter to them.

■ As the trial judge said, a will should be construed according to the intention of the testator,[1] and we should look at the situation as it existed at the time of the execution of the will in question to determine that intention.

The first wife, Maude, lived but a short time in the house, and her children, the defendants, all left the home while they were quite young. Junior was born and reared in the house, and that was during the declining years of his father. At the time of the execution of the will, 51 years had elapsed since Senior was married to the mother of the defendants.

By the will Senior gave a life estate in the home to his wife Almira and the remainder to Junior provided Junior paid the funeral expenses of his mother and $100.-00 cash to each of his half brothers and sisters. Since Senior left only a life estate to Almira, he was interested in making provision for payment of her funeral expenses, and he certainly would consider that her own descendants would be more likely to see that she had a decent funeral than would her stepchildren. Under the ruling of the trial court, who would pay for the funeral? It can hardly be thought that the testator intended that the widow be given a pauper's burial when he made his will.

It is of interest to note that the last clause in the will heretofore cited provides:

. . . my intention in all cases being that the issue of any deceased child shall take collectively the same share as the deceased child would have taken if alive.

It is clear that had Junior been alive, he would have taken his rightful devise, but since he is deceased, his children pursuant to that last clause are entitled to take whatever he would take if alive.

Aside from what appears to me to be the clear intention of Senior, the wording of the will itself requires a holding that the condition was not one precedent to the vesting of title in Junior.

A statement taken from the annotation found in 71 A.L.R. at page 1052 is of interest. It reads:

. . . Of the expressions of contingency so used, the words "when," "as soon as," "at," "upon," and "from and after," are suspensive and not directly conditional, receiving such conditional effect as they may have from the context, and, not being capable of a nonsuspensive and at the same time conditional operation, they can never operate as a condition subsequent, but only (where they have a conditional operation) as a condition precedent; while, on the other hand, the words "if," "in case," and "provided" are directly conditional, but not necessarily suspensive, so that they may operate either as a condition precedent or a condition subsequent.

It may further be noted that, apart from particular indications of intention gleaned from the context, the courts are apt to be influenced by their inclination toward construction which will give the legatee or devisee a vested rather than a contingent interest, . . .

\* \* \* \* \* \*

In most of the cases, however, in which the question has been directly presented, the condition introduced by the words "provided" or "providing" a certain age is attained has been held to be subsequent.

In the case of Pedrajas v. Bloomfield Trust Co.[2] the testator gave the income from his estate to his wife for her life and

1. Sec. 74–2–1, U.C.A.1953.

2. 101 N.J.Eq. 105, 137 A. 86, affirmed in 101 N.J.Eq. 803, 139 A. 18 (1927).

upon her death to his son "provided however he shall have reached the age of twenty-five years." It was there held that the son took a vested interest in the estate at his father's death, subject to being divested should he die before reaching the age of twenty-five years.

The case of Schrader v. Schrader [3] is squarely in point with the instant matter. There the testator gave a life estate in all his realty to his wife, Dora Schrader. The will then provided:

> . . . [I]t is further my will that on the death of said Dora Schrader my well beloved son, George Schrader, shall become the sole, absolute and unqualified owner, on the condition hereinafter expressed, of the following described real premises: . . . It is the express condition that before George Schrader shall become the sole, absolute and unqualified owner of said real premises that he shall pay to my well beloved son, Henry Schrader, the sum of $500.

The testator died in 1904. George died intestate in 1906 leaving a widow and one child. George did not pay the $500 to Henry before he died. Dora died in 1909. The court permitted the widow and daughter of George to pay the $500, saying:

> The testator's purpose, as indicated by the will, was to give his wife a life estate, subject to which he undertook to divide one piece of land between his three sons and to give the other tract to George, charged with a payment to be made to Henry. This will be effectively accomplished by permitting the defendants, as the widow and heir of George, to take the land, subject to the burden which the will imposes upon it. Such a holding works no wrong to any one—a proposition which can hardly be affirmed of any other result.

██ In the instant matter it seems clear that the testator intended to give the home to Junior upon the death of Almira subject to a divestment if he failed to make the required payments within six months after the death of Almira. Since there is nothing personal about the payment of money, the interest of Junior would descend to his heirs.

The judgment is reversed and the case is remanded with directions to enter judgment for the appellants. Costs are awarded to appellants.

CALLISTER, C. J., and CROCKETT and TUCKETT, JJ., concur.

HENRIOD, Justice (dissenting):

I respectfully dissent.

This is a dispute over the terms of a will, executed by George F. Wright, Sr., in 1948, who died, in 1956, after which his estate was probated under Probate Case No. 9229, in the District Court of Weber County, Utah, resulting in a decree of distribution as set forth in the main opinion. Briefly he left his house, apparently the only or principal asset, to his second wife for her life, and then to his son by her, if his son did what was said he had to do under the will, i. e., "Provided HE pays, within six months after HER death, $100 each to six children by a previous marriage." That is all that he said and all that he said was so clear and unequivocal as to leave no doubt whatever.

Controversy here, in my opinion, unwarrantedly seems to stem from the simple, clear language of the will which I am convinced was misinterpreted by the main opinion based on the facts.

The cause célèbre here was Wright, Jr.'s death before his mother Almira's. His three children, plaintiffs here, in a declaratory judgment action, asked the court to say that the interdiction in the will that Junior would have the property if he paid the funeral expenses and $100 apiece to his half-relatives, within six months after his own natural mother's death, which became impossible by his own premature death, inured to the benefit of his own children, plaintiffs, who, by some sort of subroga-

3.  158 Iowa 85, 139 N.W. 160, 162 (1912).

tion could make the payments. This becomes a bit absurd, when anyone knows that had the property become worthless, tax-ridden or had the house burned down, the plaintiffs' presence in this court or that of the trial court, would have been minimal, infinitesimal, nondescript but mostly idiotic if in such event the property became worthless.

The rhetoric of the briefs is interesting but somewhat unimpressive in their efforts to interpret the intention of a testator other than what he said, which in substance and specifically was this: "I give this to A if A does something I demand, but not if he doesn't,"—and does not condition such imperative with an exception.

There are a number of basic judicial fallacies in the main opinion's conclusion when it subscribes to the propositions:

1. That under a will, the testator, in specifically delegating an optional decision to a single person, by implication means three other people or any number of other people depending on fecundity, who may exercise the option. This might be true if the testator had used three little words,— not "I love you,"—but "and his heirs,"— which T did not do,—and the law on wills and succession quite universally and not unusually has said that if T's language is clear and unambiguous, and certain, and understandable, and honest, beautiful and true, and grammatically unimpeachable, the courts must respect it and not force words through the lips of one whose lips are sealed in perpetuity with a six-foot underground assist,—and without a mouthpiece. There being three eager inheritors here, all of whom affectionately do not subscribe to an interpretation of what their half-kin say otherwise would be a blot on the family escutcheon,—it is not within their ken nor the con of this court to warp the King's English to defeat or infect the plainly expressed intention of the testator.

2. Apropos or perhaps inapropos of the main opinion's conclusion, one must pose the obvious question: There being three heirs here who seem to want a house in which they or either of them apparently did not contribute any of their lives' savings, suppose only one was plaintiff here, the second was not a party plaintiff, but a third party defendant, with a counterclaim, and the third was no party and completely disinterested in the outcome,—and that it was demonstrated that there were nine other heirs of Wright, Jr.,—not Sr., who were not joined in this action, and didn't want to be joined? Under the decision of this court as reflected in this opinion,—which of those heirs would get what? Would each be subject to pay off a mortgage or lien on the house, and who would decide their individual rights or obligations? The obvious answer is that this lawsuit cannot decide any of those rights, since this suit is a civil suit and is not pursued under a probate proceeding, although the caption of this case deceptively is number "Probate No. 53886." As a matter of cold fact, it is not a probate case at all, but a civil suit asking for an interpretation of a will arising out of an independent proceeding, in Probate No. *9229*. The only way the rights of the party plaintiffs in this case possibly could be established, claiming as heirs of George F. Wright, JUNIOR, would be through the Probate Court in the administration of the latter's estate, through a duly appointed representative, if he had any estate in the nature of an option or otherwise,—with a supporting order of a Probate Judge, after a full determination of the facts of death, names and addresses of heirs, properly notified, and by notice to creditors of Wright, a hearing, with taking of testimony, under oath, etc. The brutal down-to-earth fact of this case is that it is an abortive probate proceeding disguised in a non-probate case, whose result is to eliminate the probative midwife in favor of judicial abortion.

3. When the main opinion opines that "The trial court was in error in thinking the will required a *personal act* on the part of the Junior," justifying such a distortion of the plain language in the will that "the payment of money is not a personal act which could be rendered only by the devi-

see,"—I can only say I think there is another abortion aborning,—popular these days,—and is an ipse dixit that aborts the plain meaning of the clear English language. The only person who possibly could have exercised the option here was either the devisee mentioned in the main opinion,—the deceased,—or his extended personality,—his executor. The main opinion condones the probate of a man's will in a simple civil suit, sans necessary notices to necessary and interested parties, without determining heirship, rights of creditors, estate tax problems, common sense or anything else.

This case should be returned to the trial court with instructions to order this matter processed in the Probate Division of the District Court under the statutory and other laws pertaining to wills and succession incident to disposition of decedents.